# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1917

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Vince Byers, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 11, 2010
Filed: April 28, 2010

_____

Before LOKEN,[1] Chief Judge, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Vince Byers was convicted of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, Byers argues that he is entitled to reversal of his conviction because of prosecutorial misconduct and because the district court[2] committed plain error when it instructed the jury that the

_____

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

[2]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

length of time that a firearm is possessed is not relevant under § 922(g)(1). We affirm.

I.

Shortly after 11:00 p.m., on June 24, 2003, Saint Louis Metropolitan Police Department Officers Aaron Harwood and Matthew Karnowski observed a white Mercury Cougar driven by a man later identified as Vince Byers. Officer Karnowski noticed that the temporary license tag affixed to the rear window appeared to be fake.

The officers followed the vehicle for a block, noting that there were three individuals in the vehicle and that the vehicle's left taillight did not work. When the vehicle turned right without signaling, the officers activated the police car's lights and siren in an attempt to pull the vehicle over. The vehicle initially slowed, then accelerated, slowed again, and ultimately accelerated away from the police car.

While attempting to make a turn, Byers lost control of the vehicle, which jumped the curb and hit an iron fence. As the officers approached the crash site, the three occupants exited the vehicle and fled in different directions. As he exited the vehicle and fled the scene, Byers dropped a Glock model 26 nine millimeter semiautomatic pistol. Officer Harwood pursued Byers on foot and observed that Byers was handling a second handgun, which it appeared he was trying to load.

Byers continued to run, and Harwood lost sight of him. Harwood returned to the crash site and found the Glock that Byers had dropped. The officers posted a description of the incident and Byers's physical characteristics through the police dispatcher. Shortly thereafter, an officer responding to the call saw Byers near where Harwood had lost sight of him. The officer detained Byers and escorted him back to the crash site, where Harwood identified him as the driver who had exited the vehicle, dropped the first handgun, and possessed a second handgun during the foot pursuit.

-2-

After Byers's arrest, officers retraced the path of the foot pursuit and found a CZ model 40B .40 caliber semiautomatic pistol. One round of hollow-tipped ammunition lay next to the handgun, a second round of hollow-tipped ammunition was jammed in the weapon, and its magazine was loaded with ten rounds of ammunition, including one hollow-tipped cartridge.

Byers was indicted for unlawful possession of a firearm as a previously convicted felon. Because there was no dispute that he had a qualifying prior conviction and that the handguns had crossed state lines prior to their presence in Missouri, the only issue in the case was whether Byers knowingly possessed either handgun.

During his opening statement, the prosecutor explained that the Glock handgun had an extended magazine that allowed it to hold more than thirty rounds and that the weapon had been stolen. The prosecutor elicited testimony from Officer Harwood about the firearms, asking him to describe certain photographs of the scene. Byers did not object to the opening statement, the questioning regarding the handguns, or the admission of the photographs, the handguns, and their ammunition clips.

On the second day of trial, Byers moved to exclude any evidence that the Glock handgun had been stolen. After the district court granted the motion on the ground that the evidence was unfairly prejudicial, Byers informed the court that there were no other evidentiary issues to be raised.

During his questioning, the prosecutor asked Officer Karnowski to describe the photographs that he had taken of both of the weapons. Karnowski described the Glock's extended magazine and the hollow-tipped ammunition. Karnowski testified that "should that bullet be used against somebody, it would cause a fairly devastating injury." The district court sustained Byer's relevancy-based objection when the prosecutor showed Karnowski an envelope that contained ammunition seized from the

CZ handgun and asked about the hollow-tipped ammunition. Ultimately, and without objection from Byers, the district court admitted the ammunition into evidence.

Officer David Menendez, a firearms examiner, testified regarding the firearms and the ammunition. After the district court sustained Byers's relevancy-based objection to a question about the ammunition, the prosecutor rephrased his question, and Menendez's explanation of the wound-enhancing characteristics of hollow-tipped ammunition was admitted without further objection.

Byers's cousin, Terrell Wheeler, testified that he was one of the passengers in the vehicle with Byers the evening of the arrest, that he had observed Byers in possession of a firearm, and that Byers had informed him and the other passenger that there were three guns in the car.

The jury was instructed that "[u]nder the statute upon which the indictment is based, the length of time that each firearm was possessed is not relevant." The jury was also instructed regarding actual and constructive possession. Byers did not object to these instructions.

During closing argument, and without objection from Byers, the prosecutor referred to the Glock's extended magazine and, in rebuttal, also mentioned the hollow-tipped ammunition. While deliberating, the jury sent a question to the district court asking, "[d]oes the driver of the vehicle have to know the person has a gun?" The court responded that the jury had received its instructions and that they should be guided by them. The jury then convicted Byers of one count of violating § 922(g)(1) and returned a special finding that Byers had possessed both weapons. Byers was sentenced to 180 months' imprisonment.

## II.

### A. Prosecutorial Misconduct

Byers contends that the prosecutor was guilty of misconduct by continuing to elicit testimony about the hollow-tipped ammunition and by mentioning the ammunition and the extended magazine during his closing argument. Byers argues that the evidence of the extended magazine and hollow-tipped ammunition was irrelevant because it had no tendency to prove or disprove the allegation that Byers possessed either weapon.

We conclude that Byers has failed to establish prosecutorial misconduct, because the remarks and questions were not improper. See United States v. King, 36 F.3d 728, 733 (8th Cir. 1994) (explaining that a defendant must establish that "(1) the prosecutor's remarks were improper, and (2) such remarks prejudiced his rights in obtaining a fair trial" to obtain a reversal for prosecutorial misconduct). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "We have recognized that '[a] jury is entitled to know the circumstances and background of a criminal charge,' and have permitted the introduction of evidence 'providing the context in which the crime occurred, i.e. the *res gestae*.'" United States v. LaDue, 561 F.3d 855, 857 (8th Cir. 2009) (quoting United States v. Savage, 863 F.2d 595, 599 (8th Cir. 1988)). In felon-in-possession cases, we have permitted the introduction of evidence that provides the context in which the crime occurred, including events immediately preceding the defendant's arrest and the circumstances of the arrest itself. Id. at 857-58. The characteristics of the ammunition and the magazine provided the jury with the context in which this crime occurred. The information was thus relevant and the prosecutor was not guilty of misconduct in presenting it to the jury.

## B. Jury Instructions

Byers contends that the district court erred when it instructed the jury that the length of time that each firearm was possessed was not relevant. Because Byers did not object to the instruction, we review for plain error. See Puckett v. United States, 129 S. Ct. 1423, 1429 (2009) (explaining that there is a narrow exception to the general rule that a litigant must object in a timely manner to preserve an issue for appeal). To establish plain error Byers must demonstrate that (1) there was an error that he did not affirmatively waive, (2) the error was clear and obvious, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings. Id.; United States v. Martin, 583 F.3d 1068, 1074 (8th Cir. 2009). Jury instructions are sufficient if, "taken as a whole, they adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." United States v. Rice, 449 F.3d 887, 895 (8th Cir. 2006).

We have held that police observation of defendant's brief possession of a firearm is sufficient to support a conviction. See United States v. Calicutt, 598 F.2d 1120, 1121 (8th Cir. 1979) (testimony that the defendant removed a sawed-off rifle from underneath his shirt and threw it into a trash can); United States v. Adams, 438 F.2d 644, 645 (8th Cir. 1971) (testimony that the officer observed the defendant throw the gun from the roof). Leaving open the question whether the duration of possession might ever be relevant to a finding of knowing possession, see for example United States v. Teemer, 394 F.3d 59, 63 (1st Cir. 2005), the facts in the instant case did not warrant or require an instruction to that effect, and thus the district court did not commit error of any kind in failing to give such an instruction.

With respect to the question of innocent or transitory possession, we have twice declined to rule on the availability of an innocent possession defense. See United States v. Ali, 63 F.3d 710, 717 n.9 (8th Cir. 1995) ("Because defendant failed to seek

a proper instruction on his innocent possession theory, we need not, and do not, decide at this time whether an 'innocent reasons' defense is available under § 922(g)."); United States v. Stover, 822 F.2d 48, 50 (8th Cir. 1987) (holding that any claim of error had been waived).  Byers has not demonstrated that he obtained the firearms innocently without an illicit purpose or that he tried to rid himself of them as promptly as reasonably possible.  Indeed, his possession of the weapons was transitory only because he dropped the Glock while exiting and fleeing his vehicle and the CZ while trying to evade capture by Officer Harwood.  Thus, we need not decide whether an innocent or transitory possession instruction is ever required in a § 922(g)(1) case. Compare United States v. Mason, 233 F.3d 619, 624 (D.C. Cir. 2001) (recognizing an affirmative defense for innocent possession), with United States v. Johnson, 459 F.3d 990, 996 (9th Cir. 2006) (rejecting the defense as absent from the statutory text and negated by the mens rea requirement of knowingly); United States v. Gilbert, 430 F.3d 215, 218-19 (4th Cir. 2005) (same); Teemer, 394 F.3d at 63-64 (refusing to adopt a benign transitory possession defense); United States v. Hendricks, 319 F.3d 993, 1007 (7th Cir. 2003) (affirming the district court's refusal to give an innocent possession instruction).

III.

The judgment is affirmed.

_____